John Tehranian (Bar No. 211616)
jtehranian@onellp.com
Jennifer A Mauri (Bar No. 276522)
jmauri@onellp.com
**ONE LLP**
23 Corporate Plaza Suite
Suite 150-105
Newport Beach, CA 92660
Telephone: (949) 502-2870
Facsimile: (949) 258-5081

*Attorneys for Plaintiff*, Scott Hargis, d/b/a Scott Hargis Photo

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SCOTT HARGIS, d/b/a SCOTT HARGIS PHOTO, an individual,<br><br>Plaintiff,<br><br>v.<br><br>D & J TILE COMPANY, INC., a California corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>(1) COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Scott Hargis, d/b/a Scott Hargis Photo, complains against Defendant D & J Tile Company, Inc., a California corporation, and DOES 1-10, inclusive, as follows:

**JURISDICTION AND VENUE**

1. This is a civil action seeking damages and injunctive relief against Defendants for willful copyright infringement in violation of the United States Copyright Act, 17 U.S.C. §§ 101 *et seq.*

2. This Court has subject matter jurisdiction under the United States Copyright Act, 17 U.S.C. § 501(a), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338(a) (copyright).

3. This Court has personal jurisdiction over Defendants. D&J is a California corporation that purposefully directs its commercial activities at residents of the State of California, including residents of this District. D&J is a licensed California contractor that solicits and performs commercial tile and stone work throughout California, including in this District. Among other things, D&J has performed work on projects located in this District, including the West Hollywood Sales Center in Los Angeles County, which D&J advertises on the very website at issue in this action. D&J further operates and maintains the commercial website www.djtile.com, which is accessible to and directed at prospective clients throughout California, including in this District, and through which D&J solicits project inquiries and requests for estimates, including by publishing its estimating electronic mail address, djestimates@djtile.com. Hargis is informed and believes, and based thereon alleges, that D&J knowingly and intentionally markets and advertises its services, including via its website, to persons and businesses located in this District, accepts and responds to inquiries from persons and businesses located in this District, and has derived revenue from work performed in this District. Hargis's claims arise out of and relate to those activities, because D&J carried them out by means of the very website on which D&J reproduced, distributed and

publicly displayed unauthorized copies of the Photographs, and because D&J published the Photographs as part of the "Project Portfolio" by which it advertises its work to prospective clients in this District. D&J has thereby purposefully availed itself of the privilege of conducting business in this District, and the exercise of personal jurisdiction over D&J here comports with traditional notions of fair play and substantial justice.

4. Venue is proper in this District under 28 U.S.C. § 1400(a), in that Defendants are subject to personal jurisdiction in this District, and under 28 U.S.C. §§ 1391(b) and (c) because, *inter alia*, a substantial part of the events giving rise to the claims occurred in this District, including Defendants' reproduction, distribution and public display of the Photographs by means of a commercial website directed at and accessed by consumers in this District.

## PARTIES

5. Scott Hargis, d/b/a Scott Hargis Photo, is an individual residing in Oakland, California.

6. D & J Tile Company, Inc. ("D&J") is a California corporation with its principal place of business at 1045 Terminal Way, San Carlos, California 94070. D&J's Chief Executive Officer, Secretary, and Chief Financial Officer is David Newman, who is also D&J's agent for service of process, at 1045 Terminal Way, San Carlos, California 94070. D&J owns and operates the website www.djtile.com.

7. Does 1 through 10, inclusive, are unknown to Hargis, who therefore sues said Defendants by such fictitious names. Hargis will ask leave of court to amend this Complaint and insert the true names and capacities of said Defendants when the same have been ascertained. Hargis is informed and believes and, upon such, alleges that each of the Defendants designated herein as a "Doe" is legally responsible in some manner for the events and happenings herein alleged, and that Hargis's damages as alleged herein were proximately caused by such Defendants.

/ / /

8. Hargis is informed and believes, and based thereon alleges, that at all times herein relevant, each of the Defendants was the agent, alter-ego, servant, or employee of the remaining Defendants, and each was acting within the course and scope of such agency/employment relationship and with the knowledge and consent of the remaining Defendants.

## FACTS

### Hargis and His Copyrighted Works

9. Hargis is a widely recognized architectural photographer based in the San Francisco Bay area. Hargis's photographs have appeared in numerous publications including *This Old House*, *Luxe Magazine*, *Dwell*, *The New York Times*, *The Wall Street Journal*, *Oakland Magazine*, *San Francisco Magazine*, *Diablo Magazine*, *Better Homes & Gardens*, *The San Francisco Chronicle*, and *The Los Angeles Times*.

10. Hargis is sought after by architectural and design firms around the world, including Woods Bagot, Gensler, Handel, SOM, and many others.

11. He is the author of the acclaimed book "The Essential Guide to Lighting Interiors," and frequently travels throughout North America and the world on assignment. A member of the International Association of Architectural Photographers, Hargis shares his expertise with students at workshops throughout North America, Europe, Australia, and the Middle East.

12. Among the countless photographs he has created in his career are seven photographs (the "Photographs"), true and correct copies of which are attached as **Exhibit A**, showcasing the residential high-rise tower located at 160 Folsom Street in San Francisco, California (the "Project").

13. The Photographs, which serve as the subject matter of this dispute, were timely registered with the United States Copyright Office. The Photograph bearing the title hargis_200303_0043 was registered on March 26, 2020 under registration number VA 2-200-794. The Photograph bearing the title

hargis_200612_6540 was registered on July 9, 2020 under registration number VA 2-213-444. The remaining five Photographs, bearing the titles hargis_200807_8066, hargis_200807_8105, hargis_200807_8260, hargis_200810_8452, and hargis_200810_8469, were registered on February 2, 2021 under registration number VA 2-238-809. Hargis is the author and copyright claimant of the Photographs. As the author, Hargis owns and exclusively controls the rights to reproduce, adapt, distribute, and publicly display the Photographs.

14. As a professional photographer, Hargis's livelihood depends on his ability to generate revenue from his photographs. Like other photographers, he would suffer serious financial injury if his copyrights were not enforced. This would adversely impact his livelihood and ability to create new works.

**D&J's Infringing Conduct**

15. D&J is a commercial tile and stone contractor that has, on information and belief, operated in the San Francisco Bay Area since 1989. D&J maintains its own stone fabrication facility in San Carlos, California. D&J owns and operates the website www.djtile.com (the "Website").

16. D&J maintains on the Website a "Project Portfolio," through which it publishes photographs of projects on which it has performed work in order to demonstrate the quality and scope of its installations to prospective clients, developers, architects, and general contractors, and thereby to solicit and win new business.

17. D&J has, without permission or compensation to Hargis, reproduced, modified, distributed, and publicly displayed unauthorized copies of the Photographs and/or derivatives thereof wholesale on the Website, including at https://djtile.com/projects/, https://djtile.com/project/160-folsom/ and https://djtile.com/wp-content/uploads/2022/05/. Attached hereto as **Exhibit B** are true and correct screen-captures evidencing D&J's unauthorized commercial exploitation of the Photographs, side-by-side with the original Photographs.

18. D&J has done so for blatantly commercial purposes, exploiting the Photographs to showcase the Project, and D&J's work on it, in an idyllic and picturesque light as part of its advertising efforts so that it can entice prospective clients, developers, architects, and general contractors to award tile and stone work to D&J rather than to its competitors.

19. D&J is able to garner significant attention for its services by featuring the Photographs on the Website. The Photographs, each a unique work in and of itself, depict the Project and its finishes in an attractive manner, undoubtedly playing an important role in D&J's marketing and promotional efforts intended to convince prospective clients to retain D&J rather than its competitors. Among other things, this attention, a direct consequence of the infringement, has translated into substantial ill-gotten commercial advantage and revenue for D&J.

20. D&J's acts of infringement are willful because, *inter alia*, it is a sophisticated, for-profit entity that has operated for more than three decades, with full knowledge of the strictures of federal copyright law and the basic requirements for licensing copyrighted content. D&J itself actively protects its own asserted copyrights, including as demonstrated by the "©" notice it placed on the Website. Professional photography of completed projects is, moreover, a routine and well-understood component of the marketing of construction and contracting services.

21. Even more pointedly, D&J was provided specific notice regarding its infringing activities. On October 1, 2026, counsel for Hargis sent D&J an exhaustive cease and desist letter, addressed to David Newman as Chief Executive Officer, Secretary, Chief Financial Officer and agent for service of process of D&J, by both certified mail and electronic mail. That letter identified each of the Photographs and its registration, enclosed a chart showing each Photograph as it was then being used on the Website, and demanded written confirmation by no later than October 15, 2026 that D&J had removed all uses of the Photographs, had disclosed all uses of the Photographs, including the source from which D&J obtained them, and would

permanently cease and desist from any further use of them.

22. D&J did not respond by the deadline set in that letter. It did not provide the written confirmation demanded, did not disclose its uses of the Photographs, and did not agree to cease and desist.

23. On October 22, 2026, counsel for Hargis sent D&J a second letter renewing each of those demands, demanding that D&J preserve all evidence relating to the Photographs, and requesting a response by no later than October 29, 2026.

24. On October 24, 2026, David Newman responded on D&J's behalf by electronic mail. He confirmed that "[t]he pictures you are questioning have been removed," stated that "the employee that was in charge of website is no longer with us," and advised that he had "informed our marketing people to make sure they get written authorization for use of any photos from all future projects." D&J did not disclose the source from which it had obtained the Photographs, did not provide the accounting demanded, and did not offer any compensation for its unauthorized commercial use of the Photographs.

25. On October 27, 2026, counsel for Hargis sent a respond to David Newman's October 24, 2026 email asking that D&J have its "legal counsel contact us by no later than October 29, 2026" or Hargis would "be left with no choice but to litigate this matter." Neither David Newman nor any other representative of D&J responded to that October 27, 2026 email.

26. D&J's removal of the Photographs promptly upon receipt of Hargis's letters confirms that D&J received Hargis's notice, understood it, had the right and ability to control the infringing material at all relevant times, and could have licensed the Photographs, or simply declined to use them. D&J's belated removal of the Photographs does not discharge the liability it incurred for its prior reproduction, modification, distribution, and public display of the Photographs (during which time it commercially benefited from their use), and D&J has refused to compensate Hargis a penny for that use.

27. At all relevant times, therefore, D&J clearly knew of the need for proper licensing of the Photographs and failed to obtain proper authorization for the uses detailed herein.

## FIRST CLAIM FOR RELIEF

(Copyright Infringement, 17 U.S.C. § 501)

28. Hargis incorporates herein by reference the allegations in paragraphs 1 through 27 above.

29. Hargis owns all copyrights in and to the Photographs, which are valid and subsisting under the laws of the United States.

30. Hargis has complied in all respects with the Copyright Act and all of the laws of the United States governing copyrights, and the Photographs have all been timely registered with the United States Copyright Office.

31. Defendants, without the permission or consent of Hargis, reproduced, adapted, distributed, and publicly displayed unauthorized copies of the Photographs shown in **Exhibit A** hereto. Such acts constitute infringement of Hargis's exclusive rights under copyright pursuant to 17 U.S.C. §§ 106 & 501.

32. In addition, on information and belief, Defendants, without the permission or consent of Hargis, knowingly encouraged, induced, materially contributed to, and/or facilitated the unauthorized reproduction, adaptation, distribution, and public display of unauthorized copies of the Photographs shown in **Exhibit A** hereto, and have the right and ability to stop or limit the infringement and a direct financial interest in such infringing activities.

33. Defendants are therefore directly and secondarily liable for infringement under the Copyright Act.

34. Each of the Defendants directly and individually performed the acts alleged herein, and also did so jointly and in concert with one another, or as an agent or alter ego of the other. Accordingly, each of the Defendants is liable for all of the acts alleged herein because they were the cause in fact and proximate cause of all

injuries Hargis has suffered.

35. The infringement of Hargis's rights in each of his respective copyrighted works constitutes a separate and distinct act of infringement.

36. Defendants' unlawful conduct, as set forth above, was willful, intentional, and purposeful, in disregard of and with indifference to Hargis's rights.

37. Defendants' wrongful acts have caused, and are causing, great injury to Hargis, of which damages cannot be accurately computed, and unless this Court restrains Defendants from further and continuing commission of said acts, Hargis will suffer irreparable injury, for all of which he is without an adequate remedy at law.

38. As a result of their willful infringement of seven of Hargis's copyrights, Hargis is entitled to recover his actual damages and Defendants' profits attributable to the violations, or, at his election, statutory damages of up to $1,050,000 for Defendants' unlawful actions, exclusive of attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Hargis requests judgment against Defendants as follows:

a. For a declaration that Defendants willfully infringed Hargis's copyrights;

b. For such equitable relief under Title 17, Title 28, and/or the Court's inherent authority as is necessary to prevent or restrain infringement of Hargis's copyrights, including preliminary and permanent injunctive relief requiring Defendants, and their officers, agents, servants, employees, representatives, and attorneys, and all persons in active concert or participation with them to permanently cease from designing, copying, reproducing, displaying, promoting, advertising, distributing, or selling, or any other form of dealing or transaction in, any and all advertising and promotional materials, print media, signs, Internet websites, or any other media, either now known or hereafter devised, bearing any image or design which infringes Hargis's copyrights or exclusive rights under

copyright;

c. For statutory damages pursuant to 17 U.S.C. § 504(c), in the maximum amount provided by law, as may be proven at trial, arising from Defendants' willful violations of Hargis's rights under the Copyright Act or, in the alternative, at Hargis's election pursuant to 17 U.S.C. § 504(b), Hargis's actual damages, including Defendants' profits from infringement, in amounts to be proven at trial;

d. For an order pursuant to 17 U.S.C. § 503 requiring Defendants to deliver up for destruction or other reasonable disposition all copies made or used in violation of Hargis's respective copyrights;

e. For an order pursuant to 17 U.S.C. § 505 awarding Hargis his costs in this action, including his reasonable attorneys' fees;

f. For pre-judgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against Defendants; and

g. For any such other and further relief as the Court may deem just and appropriate.

Dated: November 12, 2026

**ONE LLP**

By: *_/s/ Jennifer A. Mauri_*
Jennifer A. Mauri
John Tehranian

*Attorneys for Plaintiff,*
Scott Hargis, d/b/a Scott Hargis Photo

**DEMAND FOR JURY TRIAL**

Plaintiff Scott Hargis, d/b/a Scott Hargis Photo hereby demands trial by jury of all issues so triable under the law.

Dated: November 12, 2026

**ONE LLP**

By: */s/ Jennifer A. Mauri*
John Tehranian
Jennifer A. Mauri

*Attorneys for Plaintiff,*
Scott Hargis, d/b/a Scott Hargis Photo